In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00149-CV


______________________________




CARL BAILEY, INDIVIDUALLY AND ON BEHALF


OF ALL OTHERS SIMILARLY SITUATED, Appellants


V.



KEMPER CASUALTY INSURANCE COMPANY, ET AL., Appellees




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2001-030




 





Before Grant, Ross, and Cornelius,* JJ.

Opinion by Justice Grant



______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N



 Both parties appeal the order of the trial court granting class certification under Tex. R. Civ.
P. 42(b)(2) and denying such certification under Tex. R. Civ. P. 42(b)(4) regarding Carl Bailey's
action against numerous associated insurance companies (Kemper) for negligence, breach of
contract, violation of the Texas Insurance Code, and declaratory judgment, seeking declaratory relief
and statutory penalties. 

 Bailey contends the trial court erred in failing to find that common issues of law and fact
predominate over questions affecting only individual members, thus denying certification under Rule
42(b)(4). 

 Kemper presents eight issues on cross-appeal. Kemper contends the trial court erred in
certifying a class under a class definition proposed after the class certification hearing. Next,
Kemper contends the trial court erred by certifying a fundamentally defective class definition. 
Further, Kemper contends the trial court erred in including a trial plan that is insufficient and fatal
to the class certification. Kemper also contends the trial court erred in finding that Bailey met the
requirements of commonality, typicality, and adequate representation. Finally, Kemper contends the
trial court erred in finding that Kemper has acted or refused to act on grounds generally applicable
to the class and that declaratory relief predominated the monetary relief sought. 

 Bailey purchased a standard Texas personal automobile liability insurance policy from
appellee American Motorist Insurance Company (AMICO), a member of the Kemper Insurance
Companies in 1999. In accordance with Tex. Ins. Code Ann. art. 5.06-3 (Vernon Supp. 2002), the
policy insured Bailey, members of his household, and passengers in his covered vehicles against
medical expenses, lost earnings, and certain household expenses through coverage part B2 entitled
"Personal Injury Protection (PIP)." Bailey selected a coverage limit of $5,000 per person. The
policy included the customary "Assignment of Benefits" provision that read "Payments for medical
expenses will be paid directly to a physician or other health care provider if we receive a written
assignment signed by the covered person to whom such benefits are payable." 

 On November 29, 2000, Bailey suffered bodily injuries in a motor vehicle accident, resulting
in lost wages and medical expenses. On December 18, 2000, AMICO received a request for
payment from Dr. Charles Williams at East Texas Orthopedic Clinic, which alleged that Bailey's PIP
benefits had been assigned in writing to Dr. Williams. Bailey does not dispute that he had executed
an assignment of benefits form at Dr. Williams's request in connection with unrelated treatment in
1998, but contends that he did not intend for the assignment to apply to future treatment or charges. 
Bailey had comprehensive health insurance in effect at the time of his accident and intended for
Dr. Williams to be paid by his health insurance carrier. AMICO issued the PIP payment to
Dr. Williams on the same date Dr. Williams requested payment. Kemper did not receive the
assignment before issuing payment and did not request a copy until Bailey's counsel contacted
Kemper. The day after Dr. Williams submitted his request to AMICO, December 19, 2000, Bailey
submitted an application for PIP benefits to AMICO by way of correspondence.

 Bailey brought suit individually and on behalf of Kemper's many insured from whom Kemper
misdirected PIP benefits by naming health care providers as sole or additional payees on benefit
checks. Bailey alleged negligence in failing to use ordinary care to ensure that PIP beneficiaries
received timely payment of benefits to which they were contractually entitled and by failing to
implement policies and procedures to comply with the Texas law and the terms of their policies. 
Bailey alleged Kemper breached contract in failing to make payment of PIP benefits directly and
solely to the covered person. Bailey also alleged violation of the Texas Insurance Code by failing
to make payment within sixty days of receipt of all items, statements, and reports reasonably
requested and required under Article 21.55, Section 3(f), and by failing to properly issue payment
when due under Article 5.06-3(d)(3). Tex. Ins. Code Ann. art. 21.55, § 3(f) (Vernon Supp. 2002).
Bailey sought a judicial declaration regarding the rights of the parties to the insurance agreement
stating that both the insurance policy and the PIP statute require Kemper to issue payment of PIP
benefits directly to the coverage beneficiary in the absence of a writing signed by that person and
delivered to Kemper before the payment of benefits directing or consenting to payment directly or
solely to the health care provider. Bailey also sought to recover the statutory damages, interest, and
attorney's fees provided for in Articles 5.06-3 and 21.55 of the Texas Insurance Code. Tex. Ins.
Code Ann. arts. 5.06-3, 21.55 (Vernon Supp. 2002). Bailey requested class certification under both
Tex. R. Civ. P. 42(b)(2) and 42(b)(4).

 Bailey's request for class certification was granted in part and denied in part. The trial court
denied class certification under Rule 42(b)(4), but granted certification under 42(b)(2) for the
purposes of adjudicating Bailey's claims for declaratory and injunctive relief. Texas Rule of Civil
Procedure 42(d) provides that when appropriate, an action may be brought or maintained as a class
action with respect to particular issues. The trial court did not certify the class for the purpose of
adjudicating Bailey's claims regarding negligence, breach of contract, or violation of the Texas
Insurance Code Articles 21.55, Section 3(f) and 5.06-3(d)(3). The issues on appeal regarding the
propriety of granting certification under Texas Rule of Civil Procedure 42(b)(2) and denying
certification under Rule 42(b)(4) are thus limited to Bailey's claims for declaratory and injunctive
relief. 

Standard of Review

 This is an interlocutory appeal. Our jurisdiction over an appeal from an interlocutory order
certifying or refusing to certify a class under Texas Rule of Civil Procedure 42 is provided by Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (Vernon Supp. 2002). 

 We review the decision of the trial court in certifying or refusing to certify the class for abuse
of discretion. See Hi-Lo Auto Supply, L.P. v. Beresky, 986 S.W.2d 382, 386 (Tex. App.-Beaumont
1999, no pet.). A trial court abuses its discretion only if it "fails to properly apply the law to the
undisputed facts or acts arbitrarily, unreasonably, or without reference to any guiding principles."
Henry Schein, Inc. v. Stromboe, 28 S.W.3d 196, 200-01 (Tex. App.-Austin 2000, pet. dism'd w.o.j.). 
In conducting this review, we must view the evidence in the light most favorable to, and indulge
every presumption in favor of, the trial court's action. Entex v. City of Pearland, 990 S.W.2d 904,
909 (Tex. App.-Houston [14th Dist.] 1999, no pet.). An appellate court may not substitute its
judgment for that of the trial court, even if it would determine the issues differently than the trial
court. Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 149 (Tex. App.-Austin 1995, writ dism'd
w.o.j.).

 The party seeking class certification has the burden to establish its right to a class action. See
St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc., 929 S.W.2d 25, 30 (Tex.
App.-Texarkana 1996, no writ). The movant must demonstrate that an identifiable class exists and
is susceptible to precise definition. Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 403 (Tex. 2000);
Charlie Thomas Courtesy Leasing, Inc. v. Taylor, 44 S.W.3d 684, 687 (Tex. App.-Houston [14th
Dist.] 2001, no pet.). The movant must also establish that (1) the class is so numerous the joinder
of all members is impracticable, (2) there are issues of law or fact common to the class, (3) the
claims and defenses of the representative parties are typical of those of the class, and (4) the
representative parties will fairly and adequately represent the interests of the class. Tex. R. Civ. P.
42(a). 

 In addition, the party seeking class certification must establish that the suit falls within at
least one of four enumerated categories of actions. Tex. R. Civ. P. 42(b)(1)-(4). Rule 42(b)(2)
provides for class treatment when "the party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole . . . ." Rule 42(b)(4) provides for class
treatment when "the court finds that the questions of law or fact common to the members of the class
predominate over any questions affecting only individual members, and that a class action is superior
to other available methods for the fair and efficient adjudication of the controversy." The rules allow
suits to be maintained as class actions, when appropriate, only with regard to particular issues or to
be divided among subclasses. Tex. R. Civ. P. 42(d). To sustain the burden, the movant must show
some facts to support certification. Voluntary Purchasing Groups, Inc., 929 S.W.2d at 30-31. 

 Rule 42(c)(1) provides in part, "As soon as practicable after the commencement of an action
brought as a class action, the court shall, after hearing, determine by order whether it is to be so
maintained." Tex. R. Civ. P. 42(c)(1); Mahoney v. Cupp, 638 S.W.2d 257, 260 (Tex. App.-Waco
1982, no writ). This provision requires the proponent of the class action to both plead the elements
of a class action found in Rule 42(a) and (b) and prove those elements at a hearing set as soon as
practicable after the petition is filed. Mahoney, 638 S.W.2d at 260; also see Duncan v. Dripping
Springs Indep. Sch. Dist., 612 S.W.2d 644, 647 (Tex. Civ. App.-Austin 1981, no writ). However,
Tex. R. Civ. P. 42(c)(1) provides that the trial court can alter, amend, or withdraw certification at
any time prior to final judgment. The trial court is vested with the responsibility to manage and the
tools to respond to changes in the case, as the contours of a case may change throughout the
pendency of the suit. See Beeson, 22 S.W.3d at 407.

Class Definition-Hearing

 Kemper first contends the trial court erred in certifying a class without holding an additional
certification hearing on the class definition certified, denying Kemper due process and the hearing
required by Tex. R. Civ. P. 42(c).

 Due process under the federal and Texas constitutions requires the nonmovant to the motion
to certify a class action be given notice of the hearing held to determine class certification and the
issue of class certification will be addressed at the hearing, and be given an opportunity to be heard. 
See Rio Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631, 647 (Tex. App.-Corpus Christi
1997, pet. dism'd w.o.j.). Texas Rule of Civil Procedure 42(c)(1) requires that the court hold a
certification hearing before determining whether a proposed class may be maintained. 

 A properly defined class is essential to the maintenance of a class action, and absent a
cognizable class it would be impossible to determine whether the class satisfies the requirements of
Rule 42(a) and (b). Beeson, 22 S.W.3d at 403. The movant bears the burden to demonstrate that an
identifiable class exists and is susceptible to precise definition. Id.; Taylor, 44 S.W.3d 684. The
movant usually attempts to meet this burden by presenting one or more proposed class definitions
to the trial court. However, the trial court has broad discretion in defining a class, in evaluating the
myriad of possible definitions and determining if one is right for certification, based on the available
evidence. Beeson, 22 S.W.3d at 406. The Texas Supreme Court has indicated that in limited
circumstances, it may even be appropriate for appellate courts to redefine a class to correct
infirmities in the definition certified by the trial court. Id. at 407. Therefore, the trial court, in
exercising its discretion regarding class certification, is not bound by the definition proposed by the
parties. 

 Because a trial court is not bound by the class definitions proposed by the parties, we do not
construe Rule 42(c)(1) to require the trial court to hold an additional certification hearing on each
proposed class definition merely because the movant suggests the definition after a certification
hearing. When the movants file an amended pleading affecting the essence of the allegations,
changing the basis for certifying a class or adding an additional defendant, claiming a new cause of
action or defense, or requesting additional relief, such that the class the plaintiff seeks to represent
has been altered in such a way that the nonmovant or the class members would be adversely affected,
the trial court may be required to hold an additional certification hearing both so that the movant can
provide materials sufficient to support the certification and so that the nonmovant may voice its
opposition. See City of Pharr, 962 S.W.2d at 646-48 (the appellate court found that notice of the
certification hearing was sufficient despite the alteration of class representative and additional
request for certification as an opt-out rather than as a mandatory class four days before the hearing
because alteration did not adversely affect appellant or class members); In the Interest of M.M.O.,
981 S.W.2d 72, 85-87 (Tex. App.-San Antonio 1998, no pet.) (the appellate court found that the
certification hearing was insufficient where the record of the initial hearing could not meet the
representative's burden of establishing that certification was proper under amended pleadings adding
defendants, causes of action, and seeking additional relief, and the appellants did not have the same
incentive to contest the certification at the initial hearing). 

 The definition of the proposed class in Bailey's original petition was:

 All persons presently or formerly insured by the COMPANIES to whom the
COMPANIES tendered personal injury protection benefits in the form of drafts
naming health care providers as sole or additional payees since February 1, 1996 and
from whom the COMPANIES had not received a written assignment of benefits
executed by the person entitled to the benefits.


 The trial court conducted a certification hearing on September 4, 2001. At the hearing,
Kemper cross-examined Bailey, presented documentary evidence, and presented live testimony from
its designated expert in the fields of insurance law and class-action procedure. Bailey also presented
oral testimony. During the hearing, the trial court granted leave for Kemper to present further
briefing on issues and arguments not previously raised. The trial court also stated that the record was
open and the court would allow the parties to respond and provide written summaries and case law
on the issues. On September 14, Kemper filed a supplemental response. Bailey filed a First
Amended Original Petition on October 4, 2001, removing various Kemper companies that did not
write automobile liability insurance in Texas and requesting a different class definition:

 All persons to whom or on whose behalf the COMPANIES paid personal injury
protection benefits in the form of drafts naming health care providers as sole or
additional payees since February 1, 1996.


Bailey also filed a reply to Kemper's supplemental response. On October 16, Kemper filed a
Surreply in which Kemper objected to the timing of Bailey's amendments due to Kemper's inability
to present evidence concerning whether the class as newly defined could satisfy the prerequisites,
arguing that none of the prior briefing, evidence, or arguments addressed the new definition. 
Kemper briefly addressed why the newly proposed definition was improper, arguing that the
definition was too broad, including those who had no claim. Kemper did not request a continuance,
an extension of time, or an additional live hearing, and did not submit additional evidence in support
of its position. The trial court entered an order on October 17, 2001, certifying the plaintiff class as
defined in Bailey's amended petition.

 Kemper argues that the revised definition materially altered the basis for inclusion in the class
and dramatically expanded the gross number of class members and the legal issues that must be
addressed in the action. Kemper also argues that none of the briefing submitted by the parties or the
evidence presented to the court during the hearing expressly addressed the new definition.

 The amended pleading filed by Bailey after the certification hearing removed some of the
defendants because Kemper had shown that some of the named companies did not issue the relevant
insurance policies and proposed a different definition of the class Bailey sought to represent. The
amended pleadings did not attempt to add any defendants or causes of action, or seek any additional
relief. Neither did the newly proposed definition add any new issues to the case. The newly
proposed definition altered the basis for inclusion in the class from the definition initially proposed
by reflecting the intent to include all persons covered by the policies as opposed to only those
individuals insured under the policies. Whether the newly proposed and certified definition may
have increased the gross number of class members included, an increase in class members alone does
not alter the essence or grounds for class certification or change the issues in the case. The trial court
has the responsibility, after determining that a class exists and is susceptible to precise definition,
to determine what the most appropriate definition is for the class and if certification is proper. The
trial court exercised its discretion in identifying the common issues and adopting the newly proposed
definition in curing the definitional defects of the initially proposed definition. The trial court could
have formulated the newly proposed definition based on the record provided at the certification
hearing. The fact that Bailey proposed the definition in its amended pleading therefore does not
require the court to hold an additional certification hearing to provide Kemper with the opportunity
to voice its opposition as long as Kemper received due process regarding the certification hearing. 

 Kemper had notice of the certification hearing and that the hearing would address the issue
of certification. Kemper had notice of the essence of Bailey's claims and of the ultimate group of
persons Bailey intended to represent. Kemper was put on notice of Bailey's intention to include all
covered persons, and not just those insured under the policy, in the class before the certification
hearing, although it was not reflected in the previously proposed definition. During Bailey's
deposition, Bailey agreed that the class included "those persons who have had PIP claims with the
Kemper Insurance Companies," which includes such covered persons. Kemper was also on notice
that both the validity of any assignment received by Kemper and the timing of such receipt would
be issues before the court. In fact, Kemper's main contention in opposition of the certification at the
hearing was that the court would have to determine the merits of some of the issues in the case in
order to determine the members of the class. In preparation for the hearing, Kemper prepared
arguments specifically against the definition proposed in Bailey's petition. However, Kemper chose
not to address the propriety of certifying the class defined without the terms Kemper argued created
a fail-safe class. See Beeson, 22 S.W.3d at 403 (definition creating fail-safe class not permitted). 
Kemper had the opportunity to do so at the hearing and after the hearing, by submitting additional
information to the court. By not addressing the effect of excluding the specific terms, Kemper
assumed the risk of the court determining that Bailey had met its burden and that the evidence
supported certifying the class, albeit defined differently than Bailey had suggested. 

 Therefore, the trial court did not deny Kemper due process or violate the Rule 42(c)(1)
requirement that the trial court hold a certification hearing. Whether the plaintiff has met the burden
that certification was proper is determined on appeal by determining if the trial court abused its
discretion in determining that the certified class met the requirements of Rule 42. This point is
overruled. 

Class Definition-Overbroad

 Kemper contends the certified class is overly broad. Kemper argues that, by not limiting
membership to those who did not validly assign benefits, the class includes claimless members. 
Kemper argues the class includes those who validly assigned benefits and those who did not assign
benefits, but on whose behalf Kemper paid Medicare, which is not only legal, but mandatory
regardless of the lack of assignment. See Texas Farmers Ins. Co. v. Fruge, 13 S.W.3d 509 (Tex.
App.-Beaumont 2000, pet. denied).

 A properly defined class is essential to the maintenance of a class action. Ford Motor Co. 
v. Sheldon, 22 S.W.3d 444, 453 (Tex. 2000) (citing Beeson, 22 S.W.3d at 403). A proper class
definition determines who is entitled to notice, who is entitled to relief, what relief can be awarded,
and who will be bound by the judgment. Sheldon, 22 S.W.3d at 453. This means that class members
must be ascertainable by reference to objective criteria. Taylor, 44 S.W.3d at 687. The definition
"should not be defined by criteria that are subjective or that require an analysis of the merits of the
case." Beeson, 22 S.W.3d at 403 (definition that requires finding of liability to identify members,
a fail-safe class, is not permitted). Additionally, such class cannot be overly broad. See McAllen
Med. Ctr. v. Cortez, Inc., 66 S.W.3d 227 (Tex. 2001) (court's responsibility to protect absent
plaintiffs from confusion or reliance on class action when court may alter class in the future) (citing
Sheldon, 22 S.W.3d at 453). However, the fact that some class members may ultimately not prevail
on their claims for money damages does not make them "claim-less" or transform their uniform
interest in the declaratory relief into individual issues precluding class certification. See Clements
v. League of United Latin Am. Citizens, 800 S.W.2d 948, 951 (Tex. App.-Corpus Christi 1990, no
writ). 

 Determining membership in the class will require answering the following questions: What
payments has Kemper made for personal injury protection benefits since February 1, 1996? Which
of those benefit payments included a health care provider as a named payee on the draft? To whom
or on whose behalf were such payments made? Reference to Kemper's records will determine the
answer to all of these questions. Therefore, the members of the class are ascertainable by reference
to objective criteria. None of these questions requires an analysis of the merits of the case. 
Answering these questions will determine who is entitled to notice. The class was certified only to
adjudicate Bailey's claims for declaratory and injunctive relief. Therefore, answering the questions
above will determine who will be entitled to relief. Furthermore, the class definition determines
what relief can be awarded, to some extent. Because the class includes temporal limits, the
declaratory relief that can be awarded will be restricted to interpreting the requirements of the
insurance agreement and statutes in effect as of February 1, 1996. The definition also allows the
court to address both what constitutes a valid assignment and when it must be received by Kemper
in order for Kemper to include the health care provider as a joint or sole payee. Because the class
was certified under Rule 42(b)(2), a mandatory class, answering these questions will determine who
will be bound by the judgment.

 The class definition certified by the court avoids inclusion of merit-based criteria that would
create a fail-safe class and is broad enough to include all those, and only those individuals who have
an interest in the court's interpretation of what constitutes a valid assignment and when it must be
received by Kemper in order for Kemper to include the health care provider as a joint or sole payee
for personal injury protection benefits as of February 1, 1996. The trial court did not abuse its
discretion in determining that an identifiable class existed with regard to the claims for declaratory
and injunctive relief and that it was susceptible to precise definition. Nor did the trial court abuse
its discretion in determining that the class definition certified was permissible. Thus, the class
definition itself is not fatal to the class certification. This point is overruled. 

Trial Plan

 Kemper contends the trial plan presented in the trial court's certification order is insufficient
because it does not identify the causes of action certified and does not address how liability and
damages will be determined regarding each defendant and member of the class. 

 The trial court, in its order certifying plaintiff class, specified the causes of action for which
the class was certified. "[T]he Court hereby confers class action status to the proceeding initiated
by CARL BAILEY against KEMPER . . . for purposes of adjudicating Plaintiff's claims of
declaratory and injunctive relief." The trial court's order goes on to say:

 [I]t is likely that the central, common issues in this case may be determined through
Motions for Summary Judgment. Following certification, the Court will determine
the rights of the parties under the contracts at issue as discussed above. The Court
will then entertain Motions for Summary Judgment on the issues of waiver, and the
scope of relief available under Articles 5.06-3 and 21.55, Tex. Ins. Code. To the
extent individual questions remain after determination of the common issues, the
Court finds that their disposition will not render the case unmanageable.


 The court in Bernal stated that "it is improper to certify a class without knowing how the
claims can and will likely be tried," and required that a court's certification order indicate how claims
will be tried so that compliance with the requirements of class certification can be meaningfully
evaluated. Southwestern Refining Co. v. Bernal, 22 S.W.3d 425, 435-36 (Tex. 2000). The
certification order should identify the causes of action, how those causes of action would be tried,
how liability for each defendant would be determined, and how damages for each of the plaintiffs
would be determined. W. Teleservices, Inc. v. Carney, 37 S.W.3d 36, 41 (Tex. App.-San Antonio
2000, no pet.). The trial plan must indicate a method to resolving individual issues. Nissan Motor
Co. v. Fry, 27 S.W.3d 573, 592 (Tex. App.-Corpus Christi 2000, pet. denied). However, a detailed
trial plan is not required in every class action case and may not be necessary for every class
certification, for example, where plaintiff's claims stem from identical contractual language and a
uniform pattern of misconduct. State Farm Mut. Auto. Ins. Co. v. Lopez, 68 S.W.3d 701, 702 (Tex.
App.-Corpus Christi 2001, no pet. h.). 

 The "rigorous analysis" required by Bernal is set in the context of analyzing whether the
predominance requirement of Texas Rule of Civil Procedure 42(b)(4) was met. Bernal, 22 S.W.3d
at 435. To the extent that trial court are required to conduct a rigorous analysis of the requirements
under other provisions of Rule 42 and include a trial plan in the order certifying a class under other
provisions of Rule 42(b), the trial court's order is sufficient. This point is overruled. 

Commonality

 Kemper contends there are no issues of law or fact that are common to all class members. 

 The movant must establish that there are questions of law or fact common to the class. Tex.
R. Civ. P. 42(a). Questions common to a class are those which when answered as to one class
member are answered as to all class members. Chevron U.S.A., Inc. v. Kennedy, 808 S.W.2d 159,
162 (Tex. App.-El Paso 1991, writ dism'd w.o.j.). Commonality does not require that all questions
of law and fact must be identical, but only that an issue of law or fact exists that inheres in the
complaints of all class members. Microsoft Corp. v. Manning, 914 S.W.2d 602, 611 (Tex.
App.-Texarkana 1995, writ dism'd). A single question could provide adequate grounds for a class
action. Wente v. Georgia-Pacific Corp., 712 S.W.2d 253, 255 (Tex. App.-Austin 1986, no writ). 
The trial court must identify the substantive issues controlling the outcome of the litigation, not to
weigh the substantive merits of each class member's claims, but to determine whether the character
and nature of the case satisfy the commonality requirement. Sun Coast Res., Inc. v. Cooper, 967
S.W.2d 525, 533 (Tex. App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). 

 In the order certifying the class, the trial court identified common legal issues. The court
found that all members of the class seek both a ruling that Kemper must receive an assignment of
benefits before issuing a personal injury protection benefit check naming a health care provider as
a sole or additional payee and a determination as to the form the assignment must take in order to
comply with the terms of the policy. All members assert that Kemper has waived as a matter of law
its rights to audit the claims already paid for purposes of assessing coverage and the reasonableness
and necessity of charges incurred. All members seek a finding that the date the claims were actually
paid establishes the date on which they were due for purposes of Articles 5.06-3 and 21.55 of the
Texas Insurance Code. 

 The issues are limited to determining what the rights of the parties are under the Texas
Insurance Code and the language of the insurance policy. A declaratory judgment as to these issues
would not address issues of federal preemption, or determine liability or monetary damages. 
Although Kemper has indicated that there may be at least two subgroups of members, those for
whom Kemper had not received an assignment prior to issuing payment and those for whom Kemper
had received some writing Kemper interpreted as an assignment before issuing payment. If the issue
is framed as whether Kemper must receive an assignment of benefits in a form that complies with
the terms of the policy before issuing benefit payments, the issue is common to both subgroups. The
trial court did not abuse its discretion in determining that common issues existed. This point is
overruled. 

Typicality

 Kemper contends that Bailey's claims are not typical of those of the class because Kemper
has a defense peculiar to Bailey that destroys the typicality of the class. 

 The typicality requirement generally mandates that the class representative possess the same
interests and suffer the same injuries as the class. Fry, 27 S.W.3d 573; E. Tex. Motor Freight Sys.,
Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The typicality requirement
is satisfied when the evidence establishes that the class representative's claims have the same
essential characteristics as those of the class as a whole. Manning, 914 S.W.2d at 613; Glassell v.
Ellis, 956 S.W.2d 676, 685 (Tex. App.-Texarkana 1997, pet dism'd w.o.j.). The injuries suffered
need not be identical, but there must be a nexus between the injuries suffered by the representative
and those suffered by the other members of the class. State Farm Mut. Auto Ins. Co. v. Lopez, 45
S.W.3d 182, 191 (Tex. App.-Corpus Christi 2001, pet. filed). The claims must arise from the same
event or course of conduct giving rise to the claims of other class members and must also be based
on the same legal theories. Id. at 191; Stromboe, 28 S.W.3d at 210; Manning, 914 S.W.2d at 613. 
The presence of an "arguable defense unique to the named plaintiff" properly negates typicality only
when "it is predictable" that such defense will become a "major focus of the litigation," Koos v. First
Nat'l Bank, 496 F.2d 1162, 1164 (7th Cir. 1974), such that the named plaintiff "will become
distracted by the presence of a possible defense . . . that the representation of the rest of the class will
suffer," J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc., 628 F.2d 994, 999 (7th Cir. 1980). 

 Kemper argues that an actual assignment of benefits is a defense to liability for having paid
PIP benefits to a health care provider without first receiving an assignment. Although Kemper may
have unique defenses to liability regarding each member of the class, the class is not certified to
determine any liability. Therefore, it is not predictable that these defenses will become a major focus
of the class-action proceedings, as the class is currently certified. 

 Because the language of the insurance agreement and statutes are the same for all members
of the class, the language will have one meaning which applies to all members of the class. Bailey's
claims arise out of the same course of conduct that affects the other members of the class, Kemper's
interpretation of the insurance agreement. Such interpretation provides the nexus between the
injuries suffered by Bailey and those suffered by the other members of the class regarding Kemper's
conduct pursuant to this provision of the insurance agreement. Bailey raises both the timeliness of
the receipt of an assignment in relation to payment of benefits and the adequacy of the form of the
assignment to cover the requested health care provider charges. Although the particular facts of each
member's case may differ, Bailey's concerns of timeliness and adequacy are typical concerns shared
by the class. The trial court did not abuse its discretion in finding that Bailey's claims for declaratory
relief are typical of the other members of the class. This point is overruled. 

Fair and Adequate Representation

 Kemper contends the trial court abused its discretion in finding that Bailey and his counsel
will fairly and adequately protect the interest of the class. Kemper argues that Bailey did not
establish his familiarity with the basic issues including composition of the class and the damages
sought.

 Adequacy of representation is a question of fact and must be determined based on the
individual circumstances of the case. Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 (Tex.
App.-Austin 1995, writ dism'd w.o.j.). Among the factors affecting the adequacy determination are
(1) adequacy of counsel, (2) potential for conflicts of interest, (3) personal integrity of the plaintiffs,
(4) whether the class is unmanageable because of geographical limitations, (5) whether the plaintiffs
can afford to finance the class action, (6) the representative's familiarity with the litigation and belief
in the legitimacy of the grievance, and (7) the representative's willingness and ability to take an
active role in and control the litigation, and to protect the interests of the other class members. Id.;
Glassell, 956 S.W.2d at 682. Regarding familiarity, a class representative should be familiar with
the basic issues, including composition of the class and damages sought. See Manning, 914 S.W.2d
at 615. 

 Kemper argues that because the definition of the class was expanded after the certification
hearing, it was impossible for Bailey to establish his familiarity with the composition of the class.
However, as mentioned above, the court was not confined to the class definition proposed in the
original petition. If there were sufficient materials to convince the court that Bailey was familiar
with the composition of the class, even if the proposed definition was not the best way to define the
appropriate class, then the court did not abuse its discretion in determining that Bailey was familiar
with the composition of the class he sought to represent. 

 Bailey stated in his deposition that if an assignment was received by Kemper before Kemper
issued payment, the covered person would not be included in the class. However, Bailey later stated
that the validity of the assignment would need to be addressed by the court. Although Bailey never
explicitly provided either the proposed or certified definition, when asked specific questions about
who would be included in the class, under specific scenarios, his answers were consistent with the
composition of the certified class. Bailey demonstrated his familiarity with the class he sought to
represent. 

 Kemper also argues that Bailey was not familiar with the damages he sought to recover on
behalf of the class. At no time did Bailey include declaratory or injunctive relief when asked what
relief he sought on behalf of the class. While the declaratory judgment would provide a form of
relief, alone it would not provide damages, but might provide the contractual and statutory
interpretation necessary for the members of the class to recover the damages sought. It is reasonable
for the court to find Bailey familiar with the damages sought on behalf of the class without Bailey
having mentioned declaratory relief. At the hearing, Bailey stated, "The penalties and interest should
go to the people that are in our class, and obviously attorney's fees." In his deposition, Bailey
referred to multiple penalties, but only one statute, the PIP statute. While the representative should
be familiar with the basic issues including damages sought, there is no requirement that the
representative be familiar with the specific statutes under which such damages are sought. Although
Bailey stated in his deposition that he was unsure whether he was seeking return of the PIP benefits
paid to the health care providers, in context, his uncertainty arose from his interpretation of the 
defendant's questions, that Kemper thought he should be seeking to recover the PIP payments that
were made. At one point he stated, "If Kemper believes we should, I guess, we would." This
indicates his understanding that he had not been seeking the PIP payments on behalf of the class
along with his willingness to do so if it was necessary to "make sure it is done right." The trial court
did not abuse its discretion in determining that Bailey was an adequate representative for the certified
class. This point is overruled. 

42(b)(2) - Acting or Refusing to Act on Grounds Applicable to the Class

 Kemper contends the trial court abused its discretion in finding that Kemper acted or refused
to act on grounds generally applicable to the entire class and that injunctive and declaratory relief
is appropriate to the class as a whole.

 Texas Rule of Civil Procedure 42(b)(2) provides for class certification when, in addition to
the requirements of Rule 42(a), the movant establishes that "the party opposing the class has acted
or refused to act on grounds generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." The
framers of the federal rule, from which the Texas rule is drawn, intended (b)(2) to "reach situations
where a party has taken action or refused to take action with respect to a class and final relief of an
injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with
respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23 (advisory committee notes). 

 Bailey argues that by definition every member of the class will have been subjected to the
identical conduct of issuance of a joint or direct payment based on Kemper's interpretation of the
language of the standard Texas automobile liability insurance policy and Article 5.06-3 of the Texas
Insurance Code. Kemper maintains that neither the policy nor the law requires it to issue personal
injury protection benefits solely to the claimants unless and until it receives a signed assignment of
benefits in favor of the provider. Kemper interprets the policy to say only that Kemper must receive
an assignment without any reference as to when the assignment must be received. 

 The trial court concluded that in failing to "institute and maintain a policy requiring that an
assignment be received before any joint or direct payments were issued" Kemper had "acted and
refused to act on grounds generally applicable to the entire class." Bailey argues that all members
of the class have been subjected to the identical conduct for the identical reason, because they have
all by definition been persons to whom or on whose behalf Kemper issued a joint or direct payment. 
Although the issues of liability and damages may be different for the individual members of the
class, with some members possibly suffering no injury at all because Kemper's interpretation of the
contract provisions did not produce an incorrect result, the court did not abuse its discretion in
determining that Kemper had acted or refused to act on grounds applicable to the class. This point
is overruled. 

Declaratory Relief Predominating the Monetary Relief Sought 

 Kemper contends that the trial court abused its discretion in finding that the monetary relief
requested did not predominate over the declaratory relief. Kemper argues that because Bailey sought
both a declaration of the rights of all class members under the insurance policy and Articles 5.06-3
and 21.55 of the Texas Insurance Code and also seeks damages pursuant to those articles, as well
as attorney's fees and interest, and because removal of the request for a declaratory relief would not
impact the substance of the cause of action or change the effect of the court's finding, the declaratory
relief sought is superfluous and therefore does not predominate. 

 Cases interpreting Texas Rule of Civil Procedure 42(b)(2) require the court to find the
declaratory relief sought must predominate the monetary relief sought. TCI Cablevision v. Owens,
8 S.W.3d 837, 847 (Tex. App.-Beaumont 2000, pet. dism'd by agr.). Claims for monetary relief
"predominate unless they are incidental to related claims for injunctive or declaratory relief. 
Incidental damages are damages that flow directly from liability to the class as a whole on claims
forming the basis of the injunctive or declaratory relief." Id.; Allison v. Citgo Petroleum Corp., 151
F.3d 402, 425 (5th Cir. 1998).

 The trial court did not certify this class regarding either the statutory penalties or the causes
of action that would give rise to the statutory penalties. (1) The declaratory judgment sought by Bailey
would not establish Kemper's liability to the class as a whole. Looking only at Bailey's request for
declaratory and injunctive relief, we cannot say that the trial court abused its discretion in
determining that the declaratory judgment predominates over any monetary relief sought. This point
is overruled. 

Failure to Certify Under 42(b)(4)

 Bailey contends the trial court erred in failing to find that common issues of law and fact
predominate over questions affecting only individual members, thus denying certification under Rule
42(b)(4). 

 Texas Rule of Civil Procedure 42(b)(4) provides that 

 An action may be maintained as a class action if the prerequisites of subdivision (a)
are satisfied, and in addition: . . . the court finds that the questions of law or fact
common to the members of the class predominate over any questions affecting only
individual members, and that a class action is superior to other available methods for
the fair and efficient adjudication of the controversy. The matters pertinent to the
findings include: (A) the interest of members of the class in individually controlling
the prosecution or defense of separate actions; (B) the extent and nature of any
litigation concerning the controversy already commenced by or against members of
the class; (C) the desirability or undesirability of concentrating the litigation of the
claims in the particular forum; (D) the difficulties likely to be encountered in the
management of a class action.


 Bailey challenges only the trial court's failure to make a determination that common issues
of law and fact predominate over individual issues. Even if the trial court abused its discretion in
failing to find that common issues predominate over individual ones, because the trial court did not
include a statement in the order of certification finding that a class action is superior to other
available methods for the fair and efficient adjudication of the controversy, the court may have based
its decision on a finding that a class action was not superior to other methods of adjudication. Bailey
does not challenge the trial court's failure to find that a class action is superior to other methods of
adjudication. Therefore, Bailey waives any error in the court's failure to make such a finding. We
cannot conclude that the court abused its discretion in declining to certify the class under Rule
42(b)(4). This point of error is overruled. 

 The judgment is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: April 25, 2002

Date Decided: July 11, 2002


Publish
1. Although the trial court's certification order states that "[T]he Court finds that the requested
statutory penalties flow automatically and incidentally from the rights established by the requested
declaratory judgment and do not predominate," this finding is superfluous to the order because the
class was not certified for monetary relief nor the causes of action that would allow for such
recovery: negligence, breach of contract, violation of statute. Furthermore, the finding is erroneous
because a declaration regarding what the terms of the contract require does not determine that the
contract was breached as to all members of the class. Such a declaration does not establish that a
statute was violated, a required finding to recover the eighteen percent statutory penalty under Tex.
Ins. Code Ann. art, 21.55, § 6 (Vernon Supp. 2002). Such a declaration also does not establish that
an insurer failed to pay certain benefits when due, which is required in order to recover the twelve
percent statutory penalty under Tex. Ins. Code Ann. art. 5.06-3(3). That provision also requires that
the insurer be required to pay such benefits as the insurer failed to pay when due and for which the
person entitled to such benefits brought an action in contract to recover the same. See Tex. Ins.
Code Ann. art. 5.06-3(3) (Vernon Supp. 2002). In short, the declaratory relief would not relieve the
Plaintiffs from proving, outside the purview of the certified class action, their individual causes of
breach of contract and violation of statute in order to recover the statutory penalties.